# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 1, 2015

## STATE OF TENNESSEE V. CHRISTOPHER LOYD DAVIS

**Appeal from the Circuit Court for Hardin County**
**No. 9807     Charles C. McGinley, Judge**

_____

**No. W2014-02101-CCA-R3-CD  -  Filed October 5, 2015**

_____

Defendant, Christopher Loyd Davis, was indicted for theft of property valued over $10,000.  After a trial, Defendant was found guilty of theft.  The jury verdict form reflects a conviction for theft of property valued over $1000 but less than $10,000, a Class D felony.  The judgment form reflects a Class C felony theft conviction with a sentence of twelve years in incarceration as a Career Offender.  After the denial of a motion for new trial, Defendant appealed, arguing that the evidence was insufficient to support the conviction, that the State failed to prove the value of the property, that the trial court erred in admitting hearsay evidence, that the trial court erred in denying a jury instruction on ignorance or mistake of fact, and that the trial court erred by having extrajudicial communication with the jury.  After our review of the record and applicable authorities, we conclude that the judgments do not properly reflect the jury's verdict.  Therefore, we affirm the conviction and remand the case for entry of a corrected judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Remanded in Part

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROGER A. PAGE, JJ., joined.

Guy T. Wilkinson, District Public Defender; and Frankie K. Stanfill, Assistant Public Defender, for the appellant, Christopher Loyd Davis.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Matthew Stowe, District Attorney General; and Joshua Turnbow, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This is Defendant's direct appeal of his conviction for theft of property valued over $1000 but less than $10,000 from the Circuit Court of Hardin County.

In November of 2013, the grand jury returned an indictment charging both Defendant and Gunner L. Williams with theft of property valued more than $10,000 but less than $60,000. The indictment was based on the burglary of A&G Trucking in Crump, Tennessee, during which multiple pieces of jewelry belonging to Peggy Sue Maxwell were stolen. Defendant and the co-defendant allegedly sold most of the jewelry to Morgan & Company Jewelry Store in Savannah, Tennessee, for a total of $890.

On July 24, 2013, Ms. Maxwell arrived at her place of employment, A&G Trucking, to find her office "torn apart." The first thing she did was check her desk drawer. Ms. Maxwell had locked her jewelry in her desk drawer the night before with the intent of taking it to her lock box at the bank. Ms. Maxwell explained that she had recently taken in a "homeless family" to live with her temporarily and removed her jewelry from the house so that she "wasn't putting [herself] in a position that was going to end up with [her] losing [her] family heirloom[s]."

Ms. Maxwell called the police. Chief Jeff Plunk of the Crump Police Department responded to the call, making a list of the items stolen. According to Ms. Maxwell, they included: (1) a sapphire and diamond ring given to Ms. Maxwell by her mother on her 30th birthday, with an uncertain market value but a $15,000 "emotional value"; (2) an amethyst and diamond ring, valued at approximately $300; (3) a diamond and sapphire ring, valued at approximately $1200; (4) a diamond cluster ring, valued at "around $600"; (5) her great-grandmother's wedding ring, valued at approximately $100; (6) three diamond wedding bands, valued at approximately $150 to $200 each; (7) a loose diamond stone, valued at $900;[1] (8) "three other sets of diamond earrings"; (9) a gold chain, valued at $100; (10) two diamond bracelets, valued at approximately $600 each; (11) a diamond necklace, valued around $500 or $600; (12) a diamond necklace, valued at approximately $1000; (13) one loose diamond, value unspecified; (14) her grandmother's wedding set, value unspecified; (15) an antique Omega watch, value unspecified; and (16) one diamond earring, value unspecified. All values given for property stolen were estimated by Ms. Maxwell. She did not produce receipts or appraisals of the jewelry.

Chief Crump notified the Hardin County Sheriff's Department ("HCSD") of the burglary. Investigator Keith Amos of the HCSD recovered some of the stolen items from

---

[1] The loose stone was located underneath the drawer in her office in a "little plastic baggy." Additionally, a diamond earring was found "in the back office where they went out the window."

Morgan & Company Jewelers in Savannah. According to Autumn Powers, an employee at Morgan & Company Jewelers, Defendant sold several of the pieces to the store. Several others were sold to the store by co-defendant Gunner Williams. Defendant signed the purchase log at the store and provided his driver's license during the sale. Defendant received $730 for the jewelry that he brought in to the store. The amount received by Defendant was calculated based on "pure gold weight" or "scrap gold." Ms. Powers estimated that the market value of the jewelry would be much higher. All of the jewelry stolen from A&G Trucking was recovered except a diamond necklace, one diamond band, one loose diamond, Ms. Maxwell's grandmother's wedding set, the antique watch, one pair of HD earrings[2], and one diamond earring. Ms. Maxwell was also missing a personal laptop and a laptop case. According to Ms. Maxwell, all of the missing, unrecovered items had a combined approximate value of $4000.

Prior to trial, co-defendant Williams entered a guilty plea to theft of property valued over $10,000. Williams testified for the State that on the day of the incident, Defendant invited him to swim at the motel where Defendant was staying with his girlfriend, Paula Cook. As Williams was changing clothes in the motel room, he found the bag of jewelry. Williams took a diamond bracelet and ring from the bag and sold them to Morgan & Company the next day.

Paula Cook testified that she was dating Defendant in July of 2013. At trial, she testified that she overheard a telephone conversation between Defendant and his brother, Loyd[3] Davis, about some jewelry. She admitted that she went with Defendant to Morgan & Company sometime in July and that she was staying with Defendant at the motel in Crump on the date of the incident.

Loyd Davis testified for the defense that he visited his brother at the motel and never saw any jewelry. He recalled having a discussion about money with Defendant at his own apartment, Aspen Apartments. Loyd Davis owed his brother between $50-100 at that time. Loyd Davis, a roofer, claimed that he was occasionally paid in jewelry by his boss. Loyd Davis testified that he gave the jewelry to Defendant to pay off the debt. He stated that it was not the "first time that [Defendant had] seen [him] with jewelry." Loyd Davis insisted that he did not tell Defendant that the jewelry was stolen even though he knew it was stolen from A & G Trucking.[4] Loyd Davis claimed that he could not

---

[2] It is not clear from the record why these earrings are not in the original list of stolen property. We can only surmise that they may, in fact, be one of the "three pairs of diamond earrings" that were listed as stolen.

[3] Mr. Davis's name is spelled "Loyd" and "Lloyd" in the record on appeal. We will refer to him as "Loyd Davis" in order to distinguish him from Defendant.

[4] Loyd Davis did not testify exactly how he knew the jewelry was stolen.

describe the jewelry that he gave to his brother to satisfy the debt. He admitted that he was currently incarcerated for "[a] bunch of different stuff," including "some aggravated burglaries, theft over a thousand, a drug charge," and that he had several prior theft-related convictions.

The record on appeal does not contain a transcript of the jury's verdict or the sentencing hearing. The record does contain the jury verdict form reflecting that the jury found Defendant guilty of the lesser included offense of theft of property valued over $1000 but less than $10,000, a Class D felony. The pre-sentence report included in the record states Defendant was found guilty of "the lesser offense of theft of property, between $1,000 and $10,000." The judgment form, however, indicates that Defendant was found guilty as indicted of theft of property valued from $10,000 to $60,000, a Class C felony. The trial court sentenced Defendant to twelve years as a Career Offender.

The trial court denied a timely filed motion for new trial. On appeal, Defendant presents the following issues for our review: (1) whether the evidence was sufficient to support the conviction; (2) whether the State failed to prove the value of the stolen property; (3) whether the trial court erred by failing to instruct the jury on ignorance or mistake of fact; (4) whether the trial court erred by allowing Paula Cook to testify about a statement made by Defendant during a telephone conversation between Defendant and Loyd Davis; and (5) whether the trial court had extrajudicial communication with the jury.

*Discrepancy Between Judgment and Verdict*

Initially, while not pointed out by either party, we note that there is a discrepancy between the verdict of the jury and the judgment form ultimately entered by the trial court. This Court has been able to discern from the record that Defendant was indicted for theft of property valued between $10,000 and $60,000, a Class C felony, and the jury found him guilty of theft of property valued between $1000 and $10,000, a Class D felony. The judgment form, however, reflects a conviction for Class C felony theft rather than the Class D felony theft found by the jury. Therefore, we must remand the matter for correction of the judgment form to reflect a conviction for Class D felony theft.

Along with the incorrect conviction offense on the judgment form, the trial court sentenced Defendant as a Career Offender to twelve years for the Class C felony. Compounding matters further, the record does not contain the transcript of the sentencing hearing. We note that as a Career Offender convicted of a Class D felony, Defendant should have received a sentence of twelve years. *See* §§ 40-35-112(c)(3), (4); 40-35-108(c). Upon remand, the new judgment form should reflect a conviction for a Class D felony and a sentence of twelve years.

- 4 -

On appeal, Defendant challenges the sufficiency of the evidence. The brief submitted on appeal states the law with regard to sufficiency of the evidence and recaps the basic facts from the trial without actually analyzing why the evidence should be considered insufficient to support the conviction. In a separate issue, however, Defendant challenges the State's proof with regard to value. Specifically, Defendant points to Ms. Maxwell's testimony wherein she admitted that she did not know the market value of a ring and that the value she placed on one of the rings was a "guesstimation." Therefore, he concludes, Defendant's conviction should be modified to theft of property valued over $500. The State argues that the proof showed that Defendant exercised control over recently stolen property that was estimated to be valued at more than $10,000.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Under Tennessee law, a person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent. T.C.A. § 39-14-103(a). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-302(b). Moreover,

a defendant's recent possession of the stolen property, unless satisfactorily explained, is a circumstance from which a jury could reasonably infer that the defendant had knowledge that the property had been stolen. *See State v. James*, 315 S.W.3d 440, 450-51 (Tenn. 2010).

To sustain Defendant's Class D felony theft conviction, the State must prove the aforementioned and that the value of the property was over $1000 but less than $10,000. T.C.A. §§ 39-14-103(a), 39-14-105(3). Tennessee Code Annotated defines "value" as "(i) The fair market value of the property or service at the time and place of the offense; or (ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense[.]" T.C.A. § 39-11-106(a)(36)(A). Our supreme court has held that "[t]he market value of the article stolen, and not its original cost, is the true criterion when it is necessary to establish the value of the property in order to fix the grade of the offense[.]" *State v. Hamm*, 611 S.W.2d 826, 829 (Tenn. 1981); *see also State v. James Edgar Leverette*, No. M2009-01286-CCA-R3-CD, 2010 WL 2943290, at *2 (Tenn. Crim. App. Jul. 26, 2010), *no perm. app. filed*; *State v. Eddie H. Pittman*, No. W2009-02316-CCA-R3-CD, 2011 WL 856382, at *3 (Tenn. Crim. App. Mar. 10, 2011), *no perm. app. filed*; *State v. Rodger Watts*, No. W2010-00705-CCA-R3CD, 2011 WL 1220766, at *3 (Tenn. Crim. App. Mar. 31, 2011), *no perm. app. filed*; *State v. Alton Tappan*, No. W2006-00168-CCA-R3CD, 2007 WL 1556657, at *5 (Tenn. Crim. App. May 29, 2007), *perm. app. denied* (Tenn. Aug. 20, 2007). If the value of the property cannot be ascertained by the aforementioned criteria, the property is deemed to have a value of less than fifty dollars. *Id.* § 39-11-106(a)(36)(C). The fair market value of the stolen property is a question of fact for the jury. *Hamm*, 611 S.W.2d at 828-29.

Looking at the facts in a light most favorable to the State, it is undisputed that within a day of the burglary of A&G Trucking, Defendant was in possession of the jewelry that was stolen from Ms. Maxwell's desk. Defendant was identified by the employee of Morgan & Company Jewelers as one of the people who came in to sell the jewelry in exchange for $730. Defendant's brother, a convicted felon, testified that he got the jewelry as payment for a roofing job and gave the jewelry to Defendant to repay a personal debt. Loyd Davis knew the property was stolen but did not avail his brother of this information. The jury was presented with this information and chose to assess credibility in favor of the State's witnesses. Further, Ms. Maxwell testified as to the approximate value of the majority of the items stolen, including a ring worth $300, a diamond cluster ring worth $600, two diamond bands worth $150 each, a diamond and sapphire ring worth $1200, a wedding ring worth $100, a gold chain worth $100, two diamond bracelets worth $600 each, a diamond necklace worth $500, and a diamond necklace worth $1000. Ms. Maxwell also testified that she owned a sapphire and diamond ring worth $15,000 but testified that this was her "guesstimation" of the emotional value of the item because it was given to her by a family member. Tennessee

Rule of Evidence 701(b) permits the owner of personal property to testify about the value of that property. *See* Tenn. R. Evid. 701(b) ("A witness may testify to the value of the witness's own property or services."); *Reaves v. State*, 523 S.W.2d 218, 220 (Tenn. Crim. App. 1975). Moreover, the scrap value of the items has little bearing on either the fair market value or the replacement value. Notwithstanding the emotional value placed on the sapphire and diamond ring, Ms. Maxwell testified that the replacement value of the remaining items exceeded $5000. The jury accredited Ms. Maxwell's valuation, as was its prerogative. *See Hamm*, 611 S.W.2d at 828-29 (holding that it is up to the jury to determine the value of the items stolen). Under these circumstances, the evidence was sufficient to support the defendant's convictions. Defendant is not entitled to relief on this issue.

*Hearsay*

Defendant argues that the trial court erred by refusing to allow Ms. Cook to fully testify about a telephone conversation she overheard between Defendant and his brother about some jewelry wherein Loyd Davis informed Defendant that the jewelry was to satisfy some type of debt. When the State objected to the statement, the trial court sustained the objection, opining that the statement would be self-serving. Defendant did not make an offer of proof with respect to the excluded testimony. He now asserts on appeal that the statement "should have been allowed to show Defendant's present mental condition pursuant to Tennessee Rules of Evidence 803(3)." Save citing the rule, Defendant presents no other argument or authority to support his position.

The question of whether a statement fits under one of the exceptions to the hearsay rule is a question of law and subject to de novo review by this Court. *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015).

Tennessee Rule of Evidence 802 excludes relevant evidence if it is hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying . . . offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). While we certainly acknowledge that any testimony by Ms. Cook summarizing a telephone conversation she overheard between Defendant and his brother would be hearsay, we decline to comment on whether it would satisfy an exception to the hearsay rule. Because of the failure of Defendant to make an offer of proof as to the substance of the statement, we are unable to review this issue as there is no testimony in the record to review. Tenn. R. Evid. 103(a)(2). Additionally, the statement sought by Defendant was essentially introduced through the testimony of Loyd Davis, making any error in the trial court's ruling harmless.

Moreover, Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure provides in part that a brief shall contain "[a]n argument . . . setting forth the contentions of the

appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Rule 10(b) of this Court provides that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. 10(b). Consequently, this issue is waived.

### *Jury Instructions*

Next, Defendant argues that the trial court erred in denying his request to instruct the jury on the defense of ignorance or mistake of fact as outlined in Tennessee Pattern Jury Instruction 40.01. Defendant argues that, from the proof at trial, a reasonable jury could conclude that Defendant did not know that the jewelry was stolen, given the fact that his brother testified that he did not tell Defendant as much. The State argues that Defendant failed to request the instruction in writing and did not provide the jury instructions for our review on appeal. We agree with the State.

"[A] defendant has a right to a correct and complete charge of the law," *State v. Farner*, 66 S.W.3d 188, 204 (Tenn. 2001), and the trial court has the duty to give "a complete charge of the law applicable to the facts of the case." *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998). When the defendant raises an issue with regard to an omitted instruction, we must review the entire jury charge to determine "if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law." *State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994) (citing *In re Estate of Elam*, 738 S.W.2d 169, 174 (Tenn.1987)). Therefore, a defendant may waive an issue regarding the failure to issue a jury instruction by not including an adequate record for appellate review. *See State v. William Ray Boatwright*, No. E2012-00688-CCA-R3-CD, 2013 WL 775787, at *8 (Tenn. Crim. App. Feb. 28, 2013), *perm. app. denied* (Tenn. June 12, 2013). It is the defendant's duty "to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues [that] form the basis of the appeal." *State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999); *see* Tenn. R. App. P. 24(b). When necessary parts of the record are not included, we must presume that the trial court's ruling was correct. *See State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

Defendant has failed to include a copy of the jury instructions in the record before us. The only references to the proposed instruction on ignorance or mistake of fact in the record are the request of counsel at the close of Defendant's proof regarding whether the instruction was warranted in this case and the trial court's statement, "our jury charge adequately cover[s] everything, so your motion to charge that will be overruled." As previously stated, it is Defendant's duty to prepare an adequate record on appeal. The

jury instructions are not included in the record, precluding appellate review of this issue. Therefore, this issue has been waived.

*Extrajudicial Communication with Jury*

Finally, Defendant complains that the trial court erred by failing to poll the jury to determine if they overheard a third party request to speak to Defendant about a theft in another county. There is nothing in the record to indicate that this event even happened, much less that it prejudiced the jury or affected Defendant's "substantial rights." Without a record of the alleged incident, we are unable to review it for error. Defendant has failed to make appropriate references to the record in his appellate brief. *See* Tenn. R. App. P. 27(a)(7) and (g); Tenn. Ct. Crim. App. R. 10(b).

*Conclusion*

Because we conclude that the judgments do not properly reflect the jury's verdict, the matter must be remanded to the trial court for correction of the judgment forms to reflect a conviction for theft of property valued over $1000 but less than $10,000, a Class D felony, and sentence of twelve years as a Career Offender. In all other respects, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE